1  ELLIS GEORGE LLP
   Eric M. George (State Bar No. 166403)
2    egeorge@ellisgeorge.com
   Keith J. Wesley (State Bar No. 229276)
3    kwesley@ellisgeorge.com
   Christopher W. Arledge (State Bar No. 200767)
4    carledge@ellisgeorge.com
   2121 Avenue of the Stars, 30th Floor
5  Los Angeles, California 90067
   Telephone: (310) 274-7100
6  Facsimile: (310) 275-5697

7  Attorneys for Defendants and
   Counterclaimants Antonio R. Villaraigosa
8  and Antonio Villaraigosa for Governor
   2026

9

10                    UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12

13
   STEPHEN J. CLOOBECK, an            Case No. 2:25-cv-03790-AB-SKx
14 individual,
                                      Hon. André Birotte Jr.
15           Plaintiff and
             Counterdefendant,        **NOTICE OF MOTION AND
16                                    MOTION FOR JUDGMENT ON
        vs.                           THE PLEADINGS OF
17                                    DEFENDANTS AND
   ANTONIO R. VILLARAIGOSA, an        COUNTERCLAIMANTS
18 individual; ANTONIO                ANTONIO R. VILLARAIGOSA
   VILLARAIGOSA FOR GOVERNOR          AND ANTONIO VILLARAIGOSA
19 2026, a non-profit political       FOR GOVERNOR 2026**
   organization; and DOES 1-10,
20 inclusive,                         **MEMORANDUM OF POINTS
                                      AND AUTHORITIES**
21           Defendants and
             Counterclaimants.        [*Request for Judicial Notice,
22                                    [Proposed] Order Thereon Lodged
                                      Concurrently Herewith*]
23
                                      Date: July 11, 2025
24                                    Time:  10:00 a.m.
                                      Courtroom:  7B
25
                                      Action Filed:  April 29, 2025
26                                    Trial Date:  None Set

27

28

3013615

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 11, 2025, at 10:00 a.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable André Birotte Jr., located in the United States Courthouse, 350 West First Street, Los Angeles, California, Defendants and Counterclaimants Antonio R. Villaraigosa and Antonio Villaraigosa for Governor 2026 ("Defendants") will and hereby do move this Court, pursuant to Fed. R. Civ. P. 12(c), for an order granting judgment on the pleadings (the "Motion").

This Motion is made upon the grounds that: (i) as a matter of law, Mr. Cloobeck's lawsuit must be dismissed because the Lanham Act does not apply to political speech; (ii) dismissal is required because trademark law is confined to commercial goods or services; (iii) compounding the inapplicability of trademark law to political speech, the First Amendment bars any application of the Lanham Act that would burden political speech; (iv) the facts and circumstances here underscore the free speech limitations presented by—and the perverse consequences that would attach to—Mr. Cloobeck's claims if not promptly dismissed; (v) frequent, previous uses of the phrase at issue underscore the incompatibility of Mr. Cloobeck's lawsuit with the First Amendment; (vi) Mr. Cloobeck's trademark application reveals the true purpose of the protection he seeks: promoting public awareness of himself as a candidate for public office; (vii) the relief sought by Mr. Cloobeck reveals the extent of the First Amendment violation he invites in attempting to muzzle Mr. Villaraigosa's political speech; (viii) Mr. Cloobeck seeks to tilt an election in his favor by stifling debate and disguising the truth about which candidate has a record of proven problem solving; and (ix) Mr. Cloobeck seeks by these proceedings to force a drain on his political opponent's campaign funds.

This Motion is based on the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, the Declaration of Eric M. George filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all

1   other matters of which the Court may take judicial notice, and any argument or

2   evidence that may be presented to or considered by the Court prior to its ruling.

3        This Motion is made following the conference of counsel pursuant to L.R. 7-

4   3, which took place on May 13, 2025.

5

6   DATED:  June 4, 2025          ELLIS GEORGE LLP

7                                   Eric M. George

8                                   Keith J. Wesley

                                Christopher W. Arledge

9

10

11                    By:   _____*s/Eric M. George*_____

12                           Eric M. George

                Attorney for Defendants and

13                   Counterclaimants Antonio R. Villaraigosa

                and Antonio Villaraigosa for Governor

14                   2026

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES.............................................8

I.      INTRODUCTION...................................................................................8

II.     THE ALLEGATIONS / FACTUAL RECORD BEFORE THIS
        COURT...................................................................................................9

III.    LEGAL ARGUMENT ..........................................................................10

        A.    The Court Should Dismiss Mr. Cloobeck's Fatally-Defective
              Lawsuit Without Leave To Amend.........................................10

        B.    As A Matter of Law, Mr. Cloobeck's Lawsuit Must Be
              Dismissed Because The Lanham Act Does Not Apply To
              Political Speech.........................................................................10

              1.    Dismissal Is Required Because Trademark Law Is
                    Confined To Commercial Goods Or Services...............10

              2.    Compounding The Inapplicability Of Trademark Law To
                    Political Speech, The First Amendment Bars
                    Any Application Of The Lanham Act That Would Burden
                    Political Speech ............................................................12

        C.    The Facts And Circumstances Here Underscore The Free Speech
              Limitations Presented By—And The Perverse Consequences
              That Would Attach To—Mr. Cloobeck's Claims If Not Promptly
              Dismissed .................................................................................14

              1.    Frequent, Previous Uses Of The Phrase At Issue
                    Underscore The Incompatibility Of Mr. Cloobeck's
                    Lawsuit With The First Amendment ............................14

              2.    Mr. Cloobeck's Trademark Application Reveals The True
                    Purpose Of The Protection He Seeks:  Promoting Public
                    Awareness Of Himself As A Candidate For Public Office........17

              3.    The Relief Sought By Mr. Cloobeck Reveals The Extent
                    Of The First Amendment Violation He Invites In
                    Attempting To Muzzle Mr. Villaraigosa's Political Speech ......17

              4.    Mr. Cloobeck Seeks To Tilt An Election In His Favor By
                    Stifling Debate And Disguising The Truth About Which
                    Candidate Has A Record Of Proven Problem Solving..............19

              5.    Mr. Cloobeck Seeks By These Proceedings To Force A
                    Drain On His Political Opponent's Campaign Funds ...............20

IV.     CONCLUSION .....................................................................................21

CERTIFICATE OF COMPLIANCE............................................................23

1

## <u>TABLE OF AUTHORITIES</u>

2
3
**Page(s)**

## <u>CASES</u>

*Bosley Med. Inst., Inc. v. Kremer*,
    403 F.3d 672 (9th Cir. 2005) ................................................................ 12

*Buckley v. Valeo*,
    424 U.S. 1 (1976) ................................................................................. 13

*Cloobeck v. Gurzanski*,
    Case No. 2:21-cv-02306-FLA-DFM (C.D. Cal.) .................................. 21

*Cloobeck v. Gurzanski*,
    Case No. 2:21-cv-08212-GW-SP (C.D. Cal.) ...................................... 21

*Cloobeck v. Gurzanski*,
    Los Angeles Superior Court, Case No. 21STCV00753 ....................... 21

*Cloobeck v. Sup. Ct. of Los Angeles Cty*,
    Case No. B314752 ............................................................................... 21

*CPC Int'l, Inc. v. Skippy Inc.*,
    214 F.3d 456 (4th Cir. 2000) ............................................................... 12

*Destefani v. Ubisoft Ent.*,
    2022 WL 649262 (C.D. Cal. Jan. 10, 2022) ....................................... 10

*Gurzanski v. Cloobeck*,
    Case No. B315025 ............................................................................... 21

*Hoffman v. Cap. Cities/ABC, Inc.*,
    255 F.3d 1180 (9th Cir. 2001) ............................................................. 12

*Jackson v. Netflix Inc.*,
    506 F. Supp. 3d 1007 (C.D. Cal. 2020) ............................................... 11

*Mattel, Inc. v. MCA Recs., Inc.*,
    296 F.3d 894 (9th Cir. 2002) ............................................................... 12

*Mills v. Alabama*,
    384 U.S. 214 (1966) ............................................................................ 13

*Monitor Patriot Co. v. Roy*,
    401 U.S. 265 (1971) ............................................................................ 13

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

3
4

*New Kids on the Block v. News America Publ'g, Inc.*,
   971 F.2d 302 (9th Cir. 1992) .............................................................................. 11

5
6

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ........................................................................................ 13

7

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*,
   897 F.3d 1008 (9th Cir. 2018) .......................................................................... 10

8
9

*Prestonettes, Inc. v. Coty*,
   264 U.S. 359 (1924) ........................................................................................ 12

10
11

*Roth v. United States*,
   354 U.S. 476 (1957) ........................................................................................ 13

12
13

*Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*,
   708 F.3d 1109 (9th Cir. 2013) .......................................................................... 10

14
15

*Taubman Co. v. Webfeats*,
   319 F.3d 770 (6th Cir. 2003) ............................................................................ 12

16
17

*Think Rubix, LLC v. Be Woke. Vote*,
   2022 WL 1750969 (E.D. Cal. May 31, 2022) ...................................... 10, 11, 12

18

*Winters v. New York*,
   333 U.S. 507 (1948) ........................................................................................ 13

19
20

## STATUTES

21

Lanham Act .............................................................................. 10, 11, 12, 13

22

## RULES

23

Fed. R. Civ. P. 12(c) ........................................................................................ 10

24

## CONSTITUTIONAL PROVISIONS

25
26

U.S. Cons. amend. I .................................................... 8, 10, 11, 12, 13, 14, 17, 19, 20

27
28

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

## PERIODICALS

*Everybody knows Dick Ravitch would be the best mayor*,
  N.Y. TIMES, Aug. 17, 1989 ..................................................................... 15

Kenneth Reich, *Garamendi Intends to Run for State Insurance Post*,
  L.A. TIMES, Feb. 7, 1990, at OCA3, A22 ............................................. 15

Scott Martelle, *THE STATE / THE RECALL CAMPAIGN; AD WATCH: Peter V.
  Ueberroth; Peter Ueberroth's Campaign Has Released Its First Television
  Advertisement, a 30-second Spot that Campaign Officials Say Will Begin Airing
  Statewide Today.  The Campaign Would Not Disclose How Much It Will Spend
  on the Advertisement.: [HOME EDITION]*,
  L.A. TIMES, at A16, Sept. 8, 2003 ........................................................ 16

*U.S. Rep. Gordon Endorses Bredesen: [Final Edition]*,
  KNOXVILLE NEWS-SENTINEL, at B2, Feb. 20, 2002 ............................ 16

## NON-PERIODICAL PUBLICATIONS

Press Release, *Pennsylvania Governor Ridge Nominates Kelly Logan as Secretary
  of General Services,* PR NEWSWIRE, Aug. 6, 2001 ......................... 16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

By this lawsuit—an unfortunate "first"—plaintiff Stephen Cloobeck seeks to tilt the 2026 California gubernatorial election in his favor by preventing another candidate from using the commonly-employed phrase "proven problem solver."

Such a gambit, based solely on a pending but undecided trademark application, is anathema not only to federal trademark law and the First Amendment, but to that other candidate—Antonio Villaraigosa, who formerly served both as Los Angeles mayor and as Speaker of the State Assembly, and who now brings this motion for judgment on the pleadings (the "Motion").

As Mr. Villaraigosa now demonstrates, Mr. Cloobeck's lawsuit misunderstands fundamental principles of constitutional and federal law by:

- attempting to wield trademark law against political speech, despite trademark law's application solely to commercial goods and services;

- burdening the First Amendment rights of Mr. Villaraigosa and other candidates who seek to engage in robust free speech in an election contest; and

- trying to monopolize a common phrase which scores of politicians have used long before the parties herein, and which must remain available to all candidates seeking office in a constitutional democracy.

These legal derelictions have not, unfortunately, restrained Mr. Cloobeck from filing suit in order to achieve what we believe his agenda to be:

- shielding himself from ongoing public debate whether he is a problem creator (not solver), and the personal nature of such problems he has created; and

- forcing Mr. Villaraigosa to expend precious campaign funds to defend against Mr. Cloobeck's lawsuit.

For these reasons, as set forth more fully below, we respectfully seek dismissal of Mr. Cloobeck's lawsuit without leave to amend, and intend to seek reimbursement of all incurred fees and costs following such dismissal.

## II.    <u>THE ALLEGATIONS / FACTUAL RECORD BEFORE THIS COURT</u>

As alleged in Mr. Cloobeck's complaint:

- He and Mr. Villaraigosa "are candidates for Governor of California" (RFJN, Ex. 1 at ¶ 1);

- "In connection with [his] campaign," Mr. Cloobeck "has been using the trademark 'I AM A PROVEN PROBLEM SOLVER' . . . , which is subject to U.S. Trademark Application Serial No. 98899658" (*ibid.*);

- Mr. Villaraigosa and his campaign—defendant "Antonio Villaraigosa for Governor 2026, a non-profit political organization" (*id*. at caption, ¶6)—are engaged in the "pervasive and unrelenting use of a confusingly similar trademark 'PROVEN PROBLEM SOLVER' . . . in connection with Villaraigosa's campaign" (*id*. at ¶2); and

- Mr. Villaraigosa and his campaign "have aimed solely at unfairly competing with Plaintiff by displaying and marketing the Infringing Mark."  (*Ibid*.)

In response to the complaint, Mr. Villaraigosa and his campaign have answered, admitting to using the phrase "proven problem solver" in connection with the campaign.  (RFJN, Ex. 2 at ¶20.)

Apart from the pleadings, and to furnish the Court with additional, judicially-noticeable facts relevant to the adjudication of this Motion, Defendants have concurrently lodged a Request for Judicial Notice that:

- Identifies, with citations, instances over the past several decades in which the phrase "proven problem solver" has been employed in connection with political campaigns (RFJN, Ex. 3); and

- Attaches litigation filings from and about Mr. Cloobeck—not for the truth of their contents, but to identify already-public topics that may be debated in the course of the impending gubernatorial campaign.  (RFJN, Exs. 4-11.)

III.  **LEGAL ARGUMENT**

    A.  **The Court Should Dismiss Mr. Cloobeck's Fatally-Defective Lawsuit Without Leave To Amend**

This Motion, pursuant to Federal Rule of Civil Procedure 12(c), should be granted without leave to amend, as "the complaint could not be saved by any amendment." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1118 (9th Cir. 2013). *See also* Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.").

    B.  **As A Matter of Law, Mr. Cloobeck's Lawsuit Must Be Dismissed Because The Lanham Act Does Not Apply To Political Speech**

        1.  **Dismissal Is Required Because Trademark Law Is Confined To Commercial Goods Or Services**

In seeking to limit a political opponent's speech in connection with California's 2026 gubernatorial contest, Mr. Cloobeck misunderstands the limited, commercial scope of federal trademark law, specifically the Lanham Act, which "prohibits conduct that would confuse consumers as to the origin, sponsorship, or approval of goods or services." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1013 (9th Cir. 2018).

Trademark law will not countenance a supposed holder's effort to arrogate to himself only—and to silence others from using—supposedly trademark-protected words in a non-commercial context.[1]  Illustrative is *Think Rubix, LLC v. Be Woke.*

---

[1]  Even where a commercial / noncommercial distinction is blurred—and here it is not, as Mr. Cloobeck's complaint concedes he "has been using the trademark . . . [i]n connection with [his] campaign" (RFJN, Ex. 1 at ¶1)—courts within this Circuit have expeditiously dismissed trademark actions at the pleading stage. *See, e.g.*, *Destefani v. Ubisoft Ent.*, 2022 WL 649262, at *5-6 (C.D. Cal. Jan. 10, 2022) (dismissing trademark claims at pleading stage and without leave to amend because First Amendment protected use of plaintiff's name and related trademarks in video

*Vote*, 2022 WL 1750969 at *3 (E.D. Cal. May 31, 2022), in which owners of the
trademark "WOKE VOTE" sued over the mark "Be Woke. Vote" to promote their
political engagement efforts and their sale of goods and services.  Dismissing the
action without leave to amend, the district court held the defendants' use of the
allegedly infringing phrase was "inherently intertwined with their efforts to inform
and persuade the public on social and political issues."  (*Ibid.*)  Even though the
"plaintiff ha[d] a valid trademark covering the services in which the parties are
engaged," the district court held the Lanham Act inapplicable, given "the
fundamentally noncommercial nature of the services places the defendants' actions
within the exception to the Lanham Act." (*Ibid.*)

Think Rubix, LLC is merely a recent application of well-established
jurisprudence identifying and explaining why litigation efforts such as Mr.
Cloobeck's are doomed at the outset:

> It is important that trademarks not be 'transformed from rights against
> unfair competition to rights to control language.'  Mark A. Lemley,
> *The Modern Lanham Act and the Death of Common Sense*, 108 Yale
> L.J. 1687, 1710-11 (1999).  Such a transformation would diminish our
> ability to discuss the products or criticize the conduct of companies
> that may be of widespread public concern and importance.  *See id.*
> 'Much useful social and commercial discourse would be all but
> impossible if speakers were under threat of an infringement lawsuit
> every time they made reference to a person, company or product by
> using its trademark.'  *New Kids on the Block v. News America Publ'g,
> Inc.*, 971 F.2d 302, 307 (9th Cir. 1992).  The [lower court's]

_____

game); *Jackson v. Netflix Inc.*, 506 F. Supp. 3d 1007, 1016-17 (C.D. Cal. 2020)
(dismissing trademark claims at pleading stage and without leave to amend based on
First Amendment protection of use of "Tiger King" in title and content of
documentary).

1    injunction broadly removes most of the speech on the web site.  By

2    redacting purely editorial and historical comments, the injunction is

3    not narrowly tailored.  The Constitution will not tolerate such a

4    wholesale suppression of speech.

5  *CPC Int'l, Inc. v. Skippy Inc.*, 214 F.3d 456, 462 (4th Cir. 2000).

6       Precisely so here.  Mayor Villaraigosa's speech is not commercial.  He is not

7  selling goods and services.  He is seeking to earn votes.  And while Mr. Cloobeck

8  may be in competition for those votes, trademark law will not assist him.  *See*

9  *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676-77 (9th Cir. 2005) (citing

10  *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924)) ("A trade-mark only gives the

11  right to prohibit the use of it so far as to protect the owner's good will against the

12  sale of another's product as his.") (emphasis removed).

13          **2.**    **<u>Compounding The Inapplicability Of Trademark Law To</u>**

14                 **<u>Political Speech, The First Amendment Bars</u>**

15                 **<u>Any Application Of The Lanham Act That Would Burden</u>**

16                 **<u>Political Speech</u>**

17       In attempting to prevent a political opponent from using a commonly-

18  employed phrase in a campaign for elective office, Mr. Cloobeck's lawsuit

19  impermissibly burdens First Amendment protected speech.

20       "If speech is not 'purely commercial'—that is, if it does more than propose a

21  commercial transaction—then it is entitled to full First Amendment protection."

22  *Think Rubix, LLC*, 2022 WL at *3 (quoting *Mattel, Inc. v. MCA Recs., Inc.*, 296

23  F.3d 894, 906 (9th Cir. 2002) and *Hoffman v. Cap. Cities/ABC, Inc.*, 255 F.3d 1180,

24  1185-86 (9th Cir. 2001)).  "Even if there is a risk of public confusion regarding the

25  two marks, the defendants' speech is nonetheless protected."  *Ibid.  See*

26  *also Taubman Co. v. Webfeats*, 319 F.3d 770, 775 (6th Cir. 2003) ("as per the

27  language of the Lanham Act, any expression embodying the use of a mark not 'in

28  connection with the sale . . . or advertising of any goods or services,' and not likely

1   to cause confusion, is outside the jurisdiction of the Lanham Act and necessarily

2   protected by the First Amendment").

3        As if in contemplation of the very issue presented here, the Supreme Court in

4   *Buckley v. Valeo*, 424 U.S. 1, 14-15 (1976) (*per curium*) conclusively explained

5   why litigants such as Mr. Cloobeck may not enlist the courts in an effort to muzzle

6   an opposing political candidate's speech:

7        Discussion of public issues and debate on the qualifications of

8        candidates are integral to the operation of the system of government

9        established by our Constitution.  The First Amendment affords the

10       broadest protection to such political expression in order 'to assure

11       (the) unfettered interchange of ideas for the bringing about of political

12       and social changes desired by the people.' *Roth v. United States*, 354

13       U.S. 476, 484 (1957).  Although First Amendment protections are not

14       confined to 'the exposition of ideas,' *Winters v. New York*, 333 U.S.

15       507, 510 (1948), 'there is practically universal agreement that a major

16       purpose of that Amendment was to protect the free discussion of

17       governmental affairs  . . . .  of course includ(ing) discussions of

18       candidates. . . . ' *Mills v. Alabama*, 384 U.S. 214, 218 (1966).  This

19       no more than reflects our 'profound national commitment to the

20       principle that debate on public issues should be uninhibited, robust,

21       and wide-open,' *New York Times Co. v. Sullivan*, 376 U.S. 254, 270

22       (1964).  In a republic where the people are sovereign, the ability of the

23       citizenry to make informed choices among candidates for office is

24       essential, for the identities of those who are elected will inevitably

25       shape the course that we follow as a nation.  As the Court observed in

26       *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971), 'it can hardly

27       be doubted that the constitutional guarantee has its fullest and most

28       urgent application precisely to the conduct of campaigns for political

3013615

-13-

office.'

C.    **The Facts And Circumstances Here Underscore The Free Speech
Limitations Presented By—And The Perverse Consequences That
Would Attach To—Mr. Cloobeck's Claims If Not Promptly
Dismissed**

As explained below, the incompatibility of Mr. Cloobeck's lawsuit with the
First Amendment is underscored by (1) the frequent, historical uses of the "proven
problem solver" phrase by and about so very many individuals seeking to become
officeholders since at least as far back as 1989; (2) Mr. Cloobeck's bald admission,
in the course of an attempt to hoard for himself more than 75 trademarks, that he
seeks federal trademark protection for "[p]olitical campaign services, namely,
promoting public awareness of [himself as] a candidate for public office" (RFJN.
Ex. 1, at Page ID #14 [Trademark Application]); (3) the relief Mr. Cloobeck's
complaint seeks, which would impede Mr. Villaraigosa's ability to engage in
political speech; (4) a practical assessment of how Mr. Cloobeck's actions seek to
tilt the playing field in the 2026 gubernatorial election; and (5) the drain on a
political opponent's funds that the mere pendency of Mr. Cloobeck's lawsuit
necessarily achieves.

1.    **Frequent, Previous Uses Of The Phrase At Issue Underscore
The Incompatibility Of Mr. Cloobeck's Lawsuit With The
First Amendment**

The First Amendment protections offended by Mr. Cloobeck's lawsuit are
especially pronounced given the frequent uses of the "proven problem solver"
phrase in political contexts.  Such circumstances render it inconceivable that, after
the several decades in which politicians have used these words, Mr. Cloobeck may
invoke legal process to monopolize that phrase for exclusive use for himself and
prevent its use by others in political contexts.

A cursory search demonstrates the frequent use, starting at least as far back as

1989, of Mr. Cloobeck's purported mark.  Even confined to the context of political campaigns, candidates for decades have referred to themselves—or to others whom they have endorsed—as "proven problem solvers."  The accompanying Compendium (*see* RFJN, Ex. 3[2]), by memorializing instances in which the phrase has been employed, highlights the phrase's seemingly ubiquitous use in political contexts, as well as its increased frequency of usage the closer one comes to the present.

We reference here just some of the phrase's early uses:

|   | Statement Date | Statement | Citation |
|---|---|---|---|
| 1 | August 17, 1989 | "He's the proven problem-solver whom governors and mayors have turned to with problems that resist conventional solutions." – Citizens Committee for Ravitch (Richard Ravitch); Lieutenant Governor of New York | *Everybody knows Dick Ravitch would be the best mayor*, N.Y. TIMES, Aug. 17, 1989, at B11. |
| 2 | February 7, 1990 | "Garamendi termed himself a 'proven problem solver' and said that if elected he will work on four major challenges he sees facing California's first elected insurance commissioner next January . . . ." – John Garamendi, US House Member, California | Kenneth Reich, *Garamendi Intends to Run for State Insurance Post*, L.A. TIMES, Feb. 7, 1990, at OCA3, A22. |

---

[2]    We do not mean to suggest the Compendium has captured all such reported uses of the phrase in a political context.  There may be plenty more instances in which the phrase was used and reported in articles that do not appear on-line at the present, and there are surely multitudes of uses of the phrase in a political context that have simply not been reported.

| | Statement Date | Statement | Citation |
|---|---|---|---|
| 3 | August 6, 2001 | "'Kelly Logan is a proven problem solver who is committed to the DGS mission to continually improve its service to its customers' . . . ." – Tom Ridge, 43rd Governor of Pennsylvania | Press Release, *Pennsylvania Governor Ridge Nominates Kelly Logan as Secretary of General Services,* PR NEWSWIRE, Aug. 6, 2001. |
| 4 | December 20, 2001 | "Harold is a proven problem solver." – Roy Blunt, US Senator, Missouri | Roy Blunt, Member of U.S. House Representatives for Missouri, *Harold Bengsch Awarded 2001 Humanitarian of the Year* (December 20, 2001), CONGRESSIONAL RECORD: PROCEEDINGS AND DEBATES OF THE 107TH CONGRESS, FIRST SESSION, at E2387. |
| 5 | February 20, 2002 | "'There's no denying Tennessee has problems and we need a proven problem-solver to get us out of the mess and back on track' . . . ." – Bart Gordon, US House Member, Tennessee | Tom Humphrey, *U.S. Rep. Gordon Endorses Bredesen: [Final Edition],* KNOXVILLE NEWS-SENTINEL, at B2, Feb. 20, 2002. |
| 6 | September 8, 2003 | "'. . . Peter is a proven problem-solver who can help save jobs and create more jobs.'" – Peter Ueberroth, President of the United States Olympic Committee (via campaign materials) | Scott Martelle, *THE STATE / THE RECALL CAMPAIGN; AD WATCH: Peter V. Ueberroth; Peter Ueberroth's Campaign Has Released Its First Television Advertisement, a 30-second Spot that Campaign Officials Say Will Begin Airing Statewide Today. The Campaign Would Not Disclose How Much It Will* |

| Statement Date | Statement | Citation |
|---|---|---|
|  |  | *Spend on the Advertisement.: [HOME EDITION]*, L.A. TIMES, at A16, Sept. 8, 2003. |

### 2.    Mr. Cloobeck's Trademark Application Reveals The True Purpose Of The Protection He Seeks:  Promoting Public Awareness Of Himself As A Candidate For Public Office

The First Amendment violation invited by Mr. Cloobeck's lawsuit has its origin in his trademark application—one of more than 75 applications he filed for myriad and, in many instances, commonplace phrases (*see* RFJN, Ex. 2 [Am. Answer] at Ex. 1 [List of Trademark Applications])—which brazenly reveals his intention to procure federal protection for the purpose of:

> Political campaign services, namely, promoting public awareness of a candidate for public office; providing online information regarding political issues; . . . providing a website that features political information from a candidate for political office in regards to the candidate's views on political issues.  (RFJN, Ex. 1, at Page ID #14 [Trademark Application].)

### 3.    The Relief Sought By Mr. Cloobeck Reveals The Extent Of The First Amendment Violation He Invites In Attempting To Muzzle Mr. Villaraigosa's Political Speech

Translated from legalese[3], Mr. Cloobeck quite literally seeks from this Court

---

[3]    Mr. Cloobeck's complaint's "Prayer for Relief" seeks, among other remedies:

- "[e]ntry of an order holding [Mr. Villaraigosa and his campaign] liable for infringement of [Mr. Cloobeck's 'I AM A PROVEN PROBLEM SOLVER'] 'Senior Mark'" (RFJN, Ex. 1, ¶1, p. 9, ¶A);

- "a preliminary and permanent" order "enjoin[ing] and restrain[ing]" r.

1   nothing less than:

2   • A ruling that Mr. Villaraigosa and his campaign have violated federal

3   trademark law by Mr. Villaraigosa's use of the phrase PROVEN PROBLEM

4   SOLVER;

5   • A restraint against Mr. Villaraigosa and his campaign from using, in the

6   future, the phrase PROVEN PROBLEM SOLVER or similar language;

7   • A requirement that Mr. Villaraigosa and his campaign file a written

8   report under oath describing compliance by Mr. Villaraigosa and his campaign with

9   the foregoing;

10  • ordering the destruction by Mr. Villaraigosa and his campaign of all

11  manner of paper and electronic materials; and

12

13  _____

14      Villaraigosa and his campaign from "[u]sing any of [Mr. Cloobeck's]
        trademarks or any other trademark that is confusingly similar . . . ." (*id.*.
        p. 9, ¶B);

15  • "[e]ntry of an order requiring" Mr. Villaraigosa and his campaign "to
16      file with this Court and serve upon [Mr. Cloobeck] . . . a written report
        under oath describing in detail the manner and form in which [Mr.
17      Villaraigosa and his campaign] have complied with the injunction,
        including ceasing all use of [Mr. Cloobeck's] Senior Mark or the
18      Infringing Mark [*i.e.*, 'PROVEN PROBLEM SOLVER'] and removing
        all images of [Mr. Cloobeck's] Senior Mark or the Infringing Mark
19      from websites controlled by [Mr. Villaraigosa and his campaign]" (*id.*.
        ¶2, p. 9, ¶C);

20  • "[e]ntry of an order requiring" Mr. Villaraigosa and his campaign "to
21      deliver up for destruction all infringing materials, including all storage
        media, Internet webpages/scripts/html code, advertisements, brochures,
22      current inventory of products, listings of services, articles, packages,
        wrappers, products, displays, labels, signs, vehicle displays or signs,
23      circulars, kits, packaging, letterhead, business cards, promotional items
        . . . that contain infringing copies of [Mr. Cloobeck's] Senior Mark (*id.*.
24      pp. 9-10, ¶D); and

25  • "[a]n accounting against" Mr. Villaraigosa and his campaign, "and an
26      award of monetary relief to [Mr. Cloobeck] in an amount to be fixed by
        the Court in its discretion, including . . . [a]ll actual, compensatory,
27      consequential, and other damages, including pre- and post-judgment
        interest thereon at the highest lawful rate, suffered as a result of [Mr.
28      Villaraigosa and his campaign's] trademark infringement." (*Id.*. p. 10,
        ¶E.)

1    •    compelling Mr. Villaraigosa and his campaign to pay monetary

2    damages to Mr. Cloobeck.

3         Positing a scenario in which such relief is granted more fully reveals the

4    scope of the First Amendment violations Mr. Cloobeck invites:  under Mr.

5    Cloobeck's urged scenario, Mr. Villaraigosa would be violating a court order by

6    describing himself as a "proven problem solver" in a press conference . . . in

7    campaign literature . . . in response to a journalist's questions . . . or in a campaign

8    debate.

9         To such draconian requests, Mr. Villaraigosa responds:  *Not in this country.*

10   *Not under our First Amendment—no matter the bullying or wealth used in an*

11   *attempt to silence a candidate for elected office.  And not in keeping with anything I*

12   *have witnessed during my more than 30 years of public service—including as Mayor*

13   *of Los Angeles and as Speaker of the Assembly.*

14                    **4.    Mr. Cloobeck Seeks To Tilt An Election In His Favor By**

15                            **Stifling Debate And Disguising The Truth About Which**

16                            **Candidate Has A Record Of Proven Problem Solving**

17        Mr. Cloobeck's lawsuit and the relief it seeks reveal, as a practical matter, an

18   effort to tilt the 2026 gubernatorial election in his favor.

19        Procuring legal recognition—and court enforcement—of a trademark

20   enabling him to identify and publicize himself[4] as the sole "proven problem solver"

21   among the 2026 gubernatorial race contestants would help Mr. Cloobeck inoculate

22   against the renewal of public controversies that have dogged him.  *See* RFJN, Exs.

23   4-11.  This would be anathema to a robust and uncensored public debate over all

24   candidates' qualifications, including such legitimate topics as:

25   _____

26   [4]    The filing of this litigation promptly generated press attention (*see e.g.*, RFJN, Ex. 12 ["Cloobeck sues Villaraigosa over use of the phrase 'proven problem

27   solver'," *Los Angeles Times*, April 30, 2025]) associating Mr. Cloobeck with the phrase "proven problem solver."

28

- whether Mr. Cloobeck is a problem creator (not solver), as reflected in litigation filings associating him with problems of a personal nature (*see ibid.*[5]); and

- whether Mr. Villaraigosa—in stark contrast to the foregoing—has proven himself a problem solver in confronting preexisting societal problems—such as rising housing and living costs, joblessness, homelessness, crime, and education—throughout his tenure as a public servant, including as Los Angeles Mayor and as Speaker of the State Assembly.

### 5. Mr. Cloobeck Seeks By These Proceedings To Force A Drain On His Political Opponent's Campaign Funds

Mr. Cloobeck's actions have and will continue to force a drain on Mr. Villaraigosa's campaign coffers. No cynicism is required to recognize that in order

---

[5]   In connection with California's 2026 gubernatorial election, it would—and should—be "fair game" for voters to understand and debate publicly-available information concerning any candidate. To that end, no court should limit debate among candidates over who has the greater claim to be considered a "proven problem solver," including with respect to litigation that may shed light on a candidate's judgment or temperament.

By way of an example of such litigation, on January 8, 2021, Mr. Cloobeck sued Stefanie Gurzanski and four other parties, contending (among other allegations Mr. Cloobeck personally verified in pleadings) that (i) after having met Ms. Gurzanski the prior Summer, he had "given her property and experiences valued well in excess of $1,300,000," based upon (ii) her alleged representations to him "that she was a legitimate fashion model . . . and that she desired a lifelong relationship with him," only to (iii) later conclude that "she is a professional pornographer" and "con artist." (RFJN, Ex. 4 at ¶¶1, 4.)

For her part, Ms. Gurzanksi averred that "[w]hen she woke up and realized what he was, and attempted to escape Cloobeck's predatory grasp, he lashed out and sought to punish Ms. Gurzanski [and] harassed, threatened, and abused Ms. Gurzanski, and boasted that with his wealth, his ability to hire armies of lawyers, and with his political contacts, he could bankrupt Ms. Gurzanski, her family and friends, ruin her hopes to become a resident of the United States, and ultimately ruin her life unless she came begging to Cloobeck for forgiveness and was willing to do his bidding." (*See id.*, Ex. 5 at ¶1.)

1    to defend against this lawsuit—which Mr. Villaraigosa endeavors to do without

2    recourse to establishing a legal defense fund—he is being required to expend

3    precious campaign funds.[6]  By that measure, Mr. Cloobeck has already succeeded.

4    Following resolution of this case, we intend to move for reimbursement of all fees

5    Mr. Villaraigosa and his campaign have been required to incur.

6    **IV.    CONCLUSION**

7         For these reasons, Mr. Villaraigosa and his campaign respectfully request this

8    Motion be granted and Mr. Cloobeck's case be dismissed without leave to amend.

9

10

11

12

13

---

14    [6]    Mr. Cloobeck has admitted that he seeks to force a compromise allowing him
       the trademark protection he seeks over the contested phrase.  On May 9, 2025, Mr.
15    Cloobeck texted Mr. Villaraigosa that absent a "'compr[om]ise'" by which
       "[Mr.]Villaraigosa agrees to switch his campaign slogan from 'proven problem
16    solver' to, simply, 'problem solver'" that Mr. Cloobeck was "prepared to fight [this
       matter] to the Supreme Court of the United States '[w]hich has been my consistent
17    business practice for decades upon decades.'"  (RFJN, Ex. 2 at ¶2.)
18

19         There is ample reason to take Mr. Cloobeck at his word in so describing his
       "business practice."  In pursuing his claims against a former paramour (*see* above at
20    fn. 5), after having allegedly "boasted that with his wealth, his ability to hire armies
       of lawyers, and with his political contacts,' he could bankrupt [the paramour]" (*id*.,
21    Ex. 5 at ¶1), Mr. Cloobeck filed three lawsuits against her (one state, two federal);
       unsuccessfully petitioned for appellate writ relief; and noticed an appeal before the
22    state Court of Appeal.  (*See id*., Exs. 6, 8-11 [Dockets for (i) *Cloobeck v. Gurzanski*,
       Los Angeles Superior Court, Case No. 21STCV00753, commenced Jan. 8, 2021; (ii)
23    *Cloobeck v. Gurzanski*, Case No. 2:21-cv-02306-FLA-DFM (C.D. Cal.),
       commenced March 16, 2021; (iii) *Gurzanski v. Cloobeck*, Case No. B315025,
24    commenced by Mr. Cloobeck, August 23, 2021; (iv) *Cloobeck v. Sup. Ct. of Los
       Angeles Cty*, Case No. B314752, commenced Sept. 2, 2021; and (v) *Cloobeck v.
25    Gurzanski*, Case No. 2:21-cv-08212-GW-SP (C.D. Cal.), commenced Oct. 15,
       2021].)
26

27

28

1 | DATED:  June 4, 2025

ELLIS GEORGE LLP
Eric M. George
Keith J. Wesley
Christopher W. Arledge


By: _____ *s/ Eric M. George*
Eric M. George
Attorney for Defendants and
Counterclaimants Antonio R. Villaraigosa
and Antonio Villaraigosa for Governor
2026

3013615

-22-

1    **<u>CERTIFICATE OF COMPLIANCE</u>**

2          The undersigned, counsel of record for Defendants and Counterclaimants

3    Antonio R. Villaraigosa and Antonio Villaraigosa for Governor 2026, certifies that

4    this brief contains 4,173 words, which:

5          ☒ complies with the word limit of L.R. 11-6.1.

6          ☐ complies with the word limit set by court order dated _____.

7

8    DATED:  June 4, 2025              ELLIS GEORGE LLP

9                                     Eric M. George
                                      Keith J. Wesley
10                                    Christopher W. Arledge

11

12

13                                    By:  _____*s/ Eric M. George*_____
                                               Eric M. George
14                                    Attorney for Defendants and
                                      Counterclaimants Antonio R. Villaraigosa
15                                    and Antonio Villaraigosa for Governor
                                      2026
16

17

18

19

20

21

22

23

24

25

26

27

28