UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:25–cv–03790–AB (SK) | Date: | December 8, 2025 |
|---|---|---|---|

| Title: | *Stephen J. Cloobeck v. Antonio R. Villaraigosa, et al.* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Evelyn Chun | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**     [In Chambers] ORDER **GRANTING** THE MOTION FOR JUDGMENT ON THE PLEADINGS [Dkt. No. 30]; **GRANTING** THE RESPECTIVE REQUESTS FOR JUDICIAL NOTICE [Dkt. Nos. 31, 36]; AND **GRANTING** THE MOTION TO STRIKE [Dkt. No. 38]

     Before the Court are the following matters: a Motion for Judgment on the Pleadings filed by Defendants and Counterclaimants Antonio R. Villaraigosa and Antonio R. Villaraigosa for Governor 2026 ("Villaraigosa") (the "MJOP," Dkt. No. 30); a Request for Judicial Notice filed by Villaraigosa (Dkt. No. 31); a Request for Judicial Notice filed by Plaintiff and Counterdefendant Stephen J. Cloobeck ("Cloobeck") (Dkt. No. 36); and a Motion to Strike filed by Cloobeck (the "MTS," Dkt. No. 38). Oppositions and replies were filed in connection with these motions (Dkt. Nos. 35, 37, 39–41). The Court heard oral argument on October 31, 2025, and has reviewed all filings and supporting papers. For the reasons indicated below, the Requests for Judicial Notice (Dkt. Nos. 31, 36) are **GRANTED**, the Motion to Strike (Dkt. No. 38) is **GRANTED**, and the Motion for Judgment on the Pleadings (Dkt. No. 30) is **GRANTED**.

### I. BACKGROUND

### A. Factual Background

This action arises out of the 2026 California gubernatorial election and the use of the phrase "PROVEN PROBLEM SOLVER." The Cloobeck's First Amended Complaint ("FAC," Dkt. No. 23) alleges as follows:

Cloobeck and Villaraigosa are both candidates in the 2026 California gubernatorial race.[1] *Id.* ¶ 1. Cloobeck has been using the phrase, "I AM A PROVEN PROBLEM SOLVER," (the "Senior Mark") in connection with his gubernatorial campaign since March 2024. *Id.* ¶¶ 1, 13. The Senior Mark is the subject of substantial and continuous marketing and promotion by Cloobeck, and has been promoted by him widely through his campaign, by way of speeches, merchandise, and campaign messaging. *Id.* ¶ 14. Cloobeck's continuous and widespread use of the Senior Mark has rendered the it highly distinctive and established it as a well-known identifier of his campaign. *Id.* ¶ 15. On December 12, 2024, Cloobeck filed an application to register the Senior Mark with the U.S. Patent and Trademark Office (the "Application") under various international classes. *Id.* ¶¶ 1, 16; Exh. A. The Senior Mark is now subject to Application Serial No. 98899658. *Id.* ¶¶ 1, 16; Exh. A.

Months after Cloobeck's first use of the Senior Mark in connection with his 2026 California campaign, Villaraigosa began using the phrase "PROVEN PROBLEM SOLVER," (the "Infringing Mark") in connection with his campaign. *Id.* ¶¶ 2, 17. Villaraigosa displayed the Infringing Mark publicly including on his website and social media accounts. *Id.* ¶ 17. On or around April 18, 2025, Cloobeck's counsel sent a letter to Villaraigosa asserting Cloobeck's superior rights in the Senior Mark and demanding that he cease and desist use of the Infringing Mark. *Id.* ¶ 23; Exh. B. After no response, Cloobeck followed up by text threatening litigation. *Id.* ¶ 24. On April 29, 2025, Villaraigosa denied infringement and stated he would continue using the Infringing Mark. *Id.* ¶ 25.

---

[1] Since the Court heard oral argument on these motions, Mr. Cloobeck has withdrawn from California's 2026 gubernatorial race. The Court nevertheless reaches the same conclusion here, and this subsequent development only underscores the correctness of the Court's holding. *See* Clara Harter, *Stephen Cloobeck exits California's gubernatorial race and endorses Eric Swalwell*, L.A. TIMES (Nov. 24, 2025, 11:03 AM), https://www.latimes.com/california/story/2025-11-24/stephen-cloobeck-exits-gubernatorial-race-endorses-rep-eric-swalwell.

### B. Procedural Background

The same day, on April 29, 2025, Cloobeck filed this action against Villaraigosa. *See* Dkt. No. 1. In his FAC, Cloobeck asserts two causes of action against Villaraigosa for (1) federal trademark infringement, and (2) unfair competition under the Lanham Act. FAC ¶¶ 27–40. On July 10, 2025, Villaraigosa filed his MJOP. Cloobeck filed his Opposition (Dkt. No. 35), and Villaraigosa filed his Reply (Dkt. No. 39). Villaraigosa additionally filed a RJN in support of the MJOP (Dkt. No. 31), to which Cloobeck filed an opposition (Dkt. No. 37). Cloobeck also filed a RJN (Dkt. No. 36), as well as a MTS (Dkt. No. 38), to which Villaraigosa filed an opposition (Dkt. No. 40) and Cloobeck filed a reply (Dkt. No. 41). The Court heard oral argument on October 31, 2025 and took the motions under submission.

## II.    REQUEST FOR JUDICIAL NOTICE

Before turning to the merits of the MTS and MJOP, the Court must first consider both parties' RJN. The Court turns to those requests now.

### A. Legal Standard

Under Federal Rule of Evidence 201, courts may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see Lynch v. Leis*, 382 F.3d 642, 648 n. 5 (6th Cir. 2004) (taking judicial notice of court records available to public online); *see also United States ex rel. Hong v. Newport Sensors, Inc,* 728 F. App'x 660 (9th Cir. 2018) (holding that district court did not abuse its discretion in taking judicial notice of seven documents where engineering firm submitted website profiles to show that documents were publicly available). Court orders are properly subject to judicial notice. *See Harris v. County of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public record . . . including documents on file in federal or state courts.") (internal citations omitted); *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 943 (C.D. Cal. 2014) (taking judicial notice of court orders in other matters).

### B. Villaraigosa's Request for Judicial Notice

Villaraigosa asks the Court to take judicial notice of twelve exhibits in support of his MJOP. *See* Dkt. No. 31 at 2–3. Exhibits 1–2 include pleadings from

this very matter such as Cloobeck's FAC and Villaraigosa's Answer (Dkt. No. 27). *Id.* at 2. Exhibit 3 is a compendium identifying instances over the past several decades where the phrase "proven problem solver" has been employed in connection with political campaigns. *Id.* Exhibits 4–11 include court orders and filings from other civil matters which include Cloobeck as a party. *Id.* at 2–3. Exhibit 12 is an article published with the *Los Angeles Times* entitled "Cloobeck sues Villaraigosa over use of the phrase 'proven problem solver.'" *Id.* Cloobeck argues that taking judicial notice of Exhibits 3–12 would introduce them for "truth of their contents" and that they are irrelevant to the issues of this litigation. *See* Dkt. No. 37 at 1.

All of the documents at issue are public. Cloobeck does not dispute the authenticity or accuracy of these documents. Accordingly, the Court **GRANTS** Villaraigosa's request. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (noting that courts may take judicial notice of court filings because they are "readily verifiable"); *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (stating that federal courts may take judicial notice of proceedings in other courts, including those outside the federal system)). However, the Court does not take notice of the facts asserted within the documents or Villaraigosa's interpretations of the documents. In other words, the Court takes judicial notice of the existence of the documents and their contents, but not the truth of the matters asserted therein. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.' ").

### A. Cloobeck's Request for Judicial Notice

Cloobeck asks the Court to take judicial notice of 27 exhibits in support of his Opposition to Villaraigosa's MJOP. *See* Dkt. No. 36 at 1–3. Exhibits A–Z include federal trademark registrations and applications from the United States Patent and Trademark Office ("USPTO"). *Id.* Exhibit AA is a Notice of Opposition filed in the Trademark Trial and Appeal Board ("TTAB"). *Id.* at 3. Cloobeck does not seek to introduce Exhibits A–AA for the truth of their contents, but to demonstrate that other politicians have applied for trademarks in association with their campaigns. *Id.* at 4.

All of the documents at issue are public. Villaraigosa does not dispute the authenticity or accuracy of these documents or oppose the RJN at all. Accordingly,

the Court **GRANTS** Cloobeck's request. *See EVO Brands, LLC v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312, 1321 (C.D. Cal. 2023) ("Court have taken judicial notice of trademark registrations and applications publicly available on the USPTO website in the past."); *Autodesk, Inc. v. Dassault Sys. SolidWorks Corp.*, No. 08-04397, 2008 WL 6742224, at *2 n.1 (N.D. Cal. Dec. 18, 2008) (taking judicial notice of trademark registrations and applications publicly available on USPTO website).

### III.   MOTION TO STRIKE

Cloobeck seeks an order striking footnotes 5 and 6 from Villaraigosa's MJOP and Exhibits 4–11 from Villaraigosa's RJN. *See* MTS at 1.

#### A. Legal Standard

Federal Rule of Civil Procedure ("Rule") 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a Rule 12(f) motion "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). "Motions to strike are regarded with disfavor, as they are often used as delaying tactics, and should not be granted 'unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.' " *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 888 (N.D. Cal. 2012) (quoting *Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)).

In ruling on a motion to strike, "the court must view the pleading under attack in the light most favorable to the pleader." *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005). Whether to grant a motion to strike under Rule 12(f) is left to the court's discretion. *Fed. Sav. and Loan v. Gemini Mgmt.*, 921 F.2d 241, 243 (9th Cir. 1990); *California Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) ("[W]hether to grant a motion to strike lies within the sound discretion of the district court."). A motion to strike may be appropriate if it "will make trial less complicated or eliminate serious risks of prejudice to the moving party, delay, or confusion of the issues." *Sliger v. Prospect Mortg., LLC*, 789 F. Supp. 2d. 1212, 1216 (E.D. Cal. 2011).

#### B. Discussion

The Court finds that the challenged material—footnotes 5 and 6 of Villaraigosa's MJOP and Exhibits 4–11 to his RJN—is irrelevant to the issues presently before the Court. The cited filings from unrelated civil litigation involving Cloobeck and a former partner do not bear on the merits of this trademark dispute or on whether leave to amend should be granted if judgment were entered. The fact that Cloobeck has engaged in other litigation, which was resolved without any finding of bad faith, provides no probative value as to his intent or conduct in bringing this action. While the information is not particularly prejudicial given that the materials are part of the public record, their inclusion serves only to distract from the actual legal questions presented. The Court therefore exercises its discretion under Rule 12(f) to strike the material as immaterial and impertinent, consistent with the Rule's purpose of streamlining proceedings and avoiding unnecessary side issues. *See* Fed. R. Civ. P. 12(f). Accordingly, Cloobeck's MTS is **GRANTED**, and footnotes 5 and 6 of Villaraigosa's MJOP and Exhibits 4–11 to Villaraigosa's RJN are hereby stricken.

## IV.   MOTION FOR JUDGMENT ON THE PLEADINGS

### A. Legal Standard

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. Pro. 12(c). In reviewing a motion brought under Rule 12(c), the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.* Thus, a defendant is not entitled to judgment on the when the complaint presents factual issues that, if established, would justify recovery. *Gen. Conf. Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir.1989), *cert. denied*, 493 U.S. 1079, 110 S.Ct. 1134, 107 L.Ed.2d 1039 (1990).

A Rule 12(c) motion follows the same standard as a motion to dismiss under Rule 12(b)(6). *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012); *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Accordingly, "judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Marshall Naify Revocable Trust v. United*

*States*, 672 F.3d 620, 623 (9th Cir. 2012) (quoting *Fajardo v. Cnty. of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999)); *see also Fleming*, 581 F.3d at 925 (asserting that "judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law").

### B. Discussion

The Court has considered the parties' memoranda and Cloobeck's FAC. The Court finds that Cloobeck's FAC does not properly establish a claim under the Lanham Act and therefore fails to satisfy the pleading standard. Villaraigosa's MJOP is therefore **GRANTED.** The Court will state its reasons below.

> i. <u>The Lanham Act Protects Commercial Speech, Not Purely Political Expression</u>

A trademark is "any word, name, symbol, or device or any combination thereof…used by a person…to identify and distinguish his or her goods…from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C.A. § 1127. To establish a trademark infringement claim or an unfair competition claim under the Lanham Act, a plaintiff must show that (1) the plaintiff has a protectable ownership interest in the mark, and (2) that the defendant's use of the mark is likely to cause consumer confusion. 15 U.S.C.A. §§ 1114(1), 1125(a); *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). The standard test of ownership is priority of use—that is to say, the party claiming ownership must have been the first to actually use the mark in the sale of goods or services. *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.), as modified, 97 F.3d 1460 (9th Cir. 1996).

The Lanham Act was enacted to prevent consumer confusion and protect commercial goodwill. *See* 15 U.S.C.A. § 1125. The Ninth Circuit has stated that the Lanham Act was "expressly enacted to be applied in commercial contexts" and therefore "does not prohibit all unauthorized uses of a trademark." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005); *see also Parfums Givenchy, Inc. v. Drug Emporium, Inc.*, 38 F.3d 477, 484 (9th Cir. 1994) (stating the purpose of the Lanham Act "is to prevent consumer confusion or deception about the origin or make of a product"); *NEC Elecs. v. CAL Cir. Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987). At the heart of the Lanham Act, it was "intended to protect commercial interests against unfair competition in the market place of

goods and services, *not the market place of ideas and opinions*." *Highfields Cap. Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 977 (N.D. Cal. 2005) (emphasis added).

  While the Lanham Act primarily addresses commercial speech, courts have recognized its applicability to political speech under certain circumstances. Relying on a Second Circuit case that has expanded the Lanham Act's reach to political speech, Cloobeck urges the Court to find the Lanham Act applicable to his Senior Mark for his campaign slogan. *See* Opp. at 8–9. In *United We Stand*, the Second Circuit held that political activities, including organizing, soliciting, endorsing candidates, and distributing literature, constitute "services" within the meaning of the Lanham Act. *United We Stand Am., Inc. v. United We Stand, Am. New York, Inc.*, 128 F.3d 86, 89–92 (2d Cir. 1997).

  While persuasive, *United We Stand* does not resuscitate Cloobeck's claim. First, and notably, this case is a Second Circuit decision and not binding in the Ninth Circuit. Moreover, the context of *United We Stand* and the case at bar are vastly different. A key distinction is that in *United We Stand*, the defendant was a political organization operating as an entity that provided membership, political advocacy, and fundraising services to the public. *Id.* at 90. By contrast, here Villaraigosa is merely an individual gubernatorial candidate—he is not running a political organization engaged in offering "services characteristically rendered by a political party to and for its members, adherents, and candidates." *Id.* In addition, in *United We Stand*, the court emphasized that the defendant's use of the mark was tied to soliciting contributions, memberships, and event participation, activities with clear commercial characteristics under the Commerce Clause. *Id.* at 92–93. Here, however, Villaraigosa's use of "PROVEN PROBLEM SOLVER" occurs in the course of political messaging, debates, and campaign communications—not the sale or advertisement of goods or services. *See* MJOP at 12. Accordingly, the Court finds the extension of *United We Stand*'s holding to the case at bar inapposite.

  The Court acknowledges that other courts within this district have reached the opposite conclusion. *See Browne v. McCain*, 611 F. Supp. 2d 1073, 1079 (C.D. Cal. 2009). In *Browne v. McCain*, a court held the Lanham Act could apply in a political context, finding a campaign's unauthorized use of a musical work in its advertising potentially actionable under trademark law. *Id.* at 1081. *Browne*, however, is easily distinguishable from the current case. The court's analysis in *Browne* hinged upon a likelihood of confusion analysis, including the *Sleekcraft*

factors.² *Id.* at 1080. Because the court concluded that the defendant's campaign's use of the song created a likelihood of confusion as to sponsorship or approval, it held the Lanham Act applied. *Id.* at 1081–82. Unlike the situation in *Browne*, however, the use of "PROVEN PROBLEM SOLVER" here does not implicate confusion over the origin or sponsorship of goods or services, but rather falls within the heartland of core political expression. Accordingly, while *Browne* recognized that the Lanham Act may extend to certain political activities when there is a significant risk of confusion, this Court is unconvinced the Lanham Act is applicable to the political circumstances at bar.

On the contrary, the Court finds the facts of *Think Rubix, LLC v. Be Woke. Vote*, where a district court declined to extend the Lanham Act to political speech, far more apposite. *See Think Rubix, LLC v. Be Woke. Vote*, No. 2:21-CV-00559-KJM-AC, 2022 WL 1750969 (E.D. Cal. May 31, 2022). In *Think Rubix*, the court found that the use of defendants' "Be Woke. Vote" slogan to be "inherently intertwined" with social and political advocacy and therefore noncommercial under the Lanham Act. *Id.* at *3.³ Both *Think Rubix* and the present case involve political and civic engagement campaigns that use short punchy phrases as part of their political messaging. *Id.* at *1. In each, the marks' purpose is to inspire individuals to vote, not to identify or promote a commercial product or service. *Id.* Likewise here, "PROVEN PROBLEM SOLVER" is being used in campaign materials and messaging to persuade voters, not to engage in commercial trade. *See* MJOP. at 12. Villaraigosa is not selling goods or services or participating in the marketplace—he is seeking votes from the public for his 2026 California gubernatorial campaign. *Id.* Because the speech at issue is quintessentially political and noncommercial, the Court finds *Thinks Rubix* analogous to the present case, and the Lanham Act inapplicable.

---

² The Ninth Circuit considers the following factors, known as *Sleekcraft* factors, in determining whether likelihood of confusion exists between two marks: (1) strength of the mark, (2) proximity or relatedness of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) degree of care customers are likely to exercise in purchasing the goods, (7) defendant's intent in selecting the mark, and (8) likelihood of expansion into other markets. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979).

³ Notably, unlike the court in *Browne*, the court in *Think Rubix* concluded that even if there was a risk of confusion between the two marks, the Lanham Act still does not apply to political speech where the speech is not commercial. *Id.* at *3 ("Even if there is a risk of public confusion regarding the two marks, the defendants' speech is nonetheless protected.").

### ii. *Even If the Lanham Act Extended to Political Speech, There Is No Plausible Risk of Confusion*

The Court rejects Cloobeck's contention that the Lanham Act applies in this context. The Lanham Act's focus is avoiding consumer confusion about the source of sponsorship of goods or services. *See OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1013 ("The Lanham Act prohibits conduct that would confuse consumers as to the origin, sponsorship, or approval of goods or services."); *see also Parfums Givenchy, Inc.*, 38 F.3d at 484 (stating the purpose of the Lanham Act "is to prevent consumer confusion or deception about the origin or make of a product"). A likelihood of confusion exists "when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." *Nutri/System, Inc. v. Con–Stan Indus., Inc.*, 809 F.2d 601, 604 (9th Cir.1987).

Assuming arguendo that the Lanham Act should apply to noncommercial political speech, the Court is nevertheless unpersuaded that any likelihood of confusion exists between the two marks sufficient to trigger Lanham Act protection. Voters understand that Cloobeck and Villaraigosa are two distinct individuals and political candidates—they are opponents in a high-profile gubernatorial election. They have separate and distinct campaign websites, social media accounts, and both engage with the public widely and separately through campaign speeches and messaging. No reasonable person would believe Cloobeck and Villaraigosa are affiliated simply because both use a descriptive phrase commonly used by political candidates for their campaigns. Moreover, the FAC contains no allegations of misdirected donations, mistaken identity, or any other indicia of confusion. *See generally* FAC. To the extent any risk of confusion exists, the Court finds it purely hypothetical and insignificant.

This absence of confusion further distinguishes this matter from the cases on which Cloobeck relies. Even if *United We Stand* supports extending the Lanham Act to certain political activities, that decision turned on clear evidence of confusion between two political organizations—not individual candidates using similar slogans. *See United We Stand Am., Inc.*, 128 F.3d at 93 ("This is precisely the use that is reserved by the Lanham Act to the owner of the mark. Even assuming that [defendant] might communicate its political message more effectively by appropriating [plaintiff's], such appropriation would cause significant consumer confusion."). A likelihood of confusion analysis was also central to the outcome in *Browne*, where the court declined to dismiss the claim

because such confusion was plausible on the record. *See Browne*, 611 F. Supp. 2d at 1081. ("Thus, the Court finds that Senator McCain has not established that Plaintiff cannot show likelihood of confusion at this time and rejects Senator McCain's contention that the Court should dismiss this claim on that basis."). Here, by contrast, no such confusion is alleged or reasonably inferable. Accordingly, because there is no risk of confusion for voters, the Court finds the Lanham Act not applicable to Cloobeck's claim.

> iii. *"Proven Problem Solver" Is a Descriptive, Generic Phrase Not Entitled to Exclusive Protection*

The Court further declines to adopt Cloobeck's position because the Senior Mark is generic in nature and the requested relief is overly broad. "PROVEN PROBLEM SOLVER" describes a desirable political trait, not a source identifier. When voters consider candidates for public office, they naturally seek individuals who can solve the problems of their communities—whether addressing homelessness, the economy, or housing. In that sense, voters are, by definition, looking for "problem solvers." Given this, it is unsurprising that numerous politicians have used the phrase "proven problem solver" in campaign materials dating back decades. *See* MJOP at 14–17. This signifier in politics can be traced all the way back as far as 1989. *Id.* Granting exclusive rights to a single candidate for such a common descriptor would remove a phrase from ordinary political discourse and risk chilling core campaign speech. The record also shows that Cloobeck has filed roughly seventy-five trademark applications for various slogans and phrases, including the Senior Mark. *See* Villaraigosa RJN Exh. 2 ("Answer") at Exh. 1. Enforcing this particular mark would effectively grant Cloobeck a monopoly over common campaign rhetoric, barring not only Villaraigosa but potentially any future candidate from using these three ordinary words together. Although the Court does not view this private enforcement action as implicating the First Amendment directly, the practical effect of granting such relief would extend trademark protection well beyond its proper bounds.

Cloobeck argues that enforcement is consistent with the many political trademarks obtained by other candidates, citing examples such as "MAKE AMERICA GREAT AGAIN," "YES WE CAN," and "BUILD BACK BETTER." *See* Opp. to MJOP at 7–9. He contends that these registrations reflect a common practice among candidates to distinguish their campaigns through identifiable slogans. *Id.* While it is true that some political slogans have been registered under as trademarks, those slogans were historically distinctive and uniquely associated

with a specific candidate or movement.[4] By contrast, the Court finds that the Senior Mark—"I AM A PROVEN PROBLEM SOLVER"—is merely descriptive and lacks any distinctiveness or singular association with Cloobeck's campaign. The Court is unconvinced that mere chronological priority in filing a trademark application entitles Cloobeck to exclusive control over such inherently generic political language. Accordingly, the Court declines to extend the Lanham Act to circumstances that would effectively restrict candidates from using ordinary campaign language.

Finally, the Court is especially cautious about the breadth of relief Cloobeck seeks. His Prayer for Relief requests an order enjoining Villaraigosa and all those acting in concert with him from using any mark "confusingly similar" to Cloobeck's. *See* FAC at 10. Although Cloobeck presently identifies only the phrase "PROVEN PROBLEM SOLVER," the Court is concerned that such language could easily be expanded to encompass other ordinary expressions such as "PROBLEM SOLVER" or "PROVEN TO SOLVE PROBLEMS." This underscores the slippery slope inherent in granting the requested injunction. Moreover, while the immediate relief is directed at Villaraigosa, its logic could extend to other political candidates using comparable phrasing in the future. Given the generic nature of the Senior Mark and the difficulty of crafting narrowly tailored relief without unduly restricting political speech, the Court concludes that the Lanham Act cannot support the claim or the remedy sought.

For the foregoing reasons, the Court concludes that Cloobeck's claims under the Lanham Act fail as a matter of law. The phrase "PROVEN PROBLEM SOLVER" constitutes noncommercial, political speech that falls outside the scope of the Lanham Act's protections. Even if the Lanham Act were applicable, Cloobeck has not plausibly alleged a likelihood of confusion, and the phrase itself is a descriptive, generic expression not entitled to exclusive protection. Accordingly, the Court **GRANTS** Villaraigosa's Motion for Judgment on the Pleadings for Cloobeck's claims for trademark infringement and unfair competition under the Lanham Act.

---

[4] Hodges, Adam, "'Yes, We Can' and the Power of Political Slogans," *Anthropology News* (Oct. 21, 2019), https://www.anthropology-news.org/articles/yes-we-can-and-the-power-of-political-slogans/ (explaining how distinctive slogans like "Yes We Can" became uniquely tied to particular candidates and political movements).

## V. LEAVE TO AMEND

### A. Legal Standard

If a motion for judgment on the pleadings is granted, the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A "district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile." *Natl. Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015). The purpose of granting leave to amend is to allow "plaintiff[s] with a meritorious claim to cure any technical defects." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000). But leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). And "the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *In re Read–Rite Corp.*, 335 F.3d 843, 845 (9th Cir. 2003) (internal quotations and citation omitted).

### B. Discussion

The Court **DENIES** leave to amend, as Cloobeck has already amended his complaint and further amendment appears futile as the claims under the Lanham Act fail as a matter of law. *See Franklin v. Adams & Assocs., Inc.*, No. 2:16-cv-00303-TLN-KJN, 2017 WL 5177691, at *2 (E.D. Cal. Nov. 7, 2017) ("Courts have the discretion in appropriate cases to grant a Rule 12(c) motion with leave to amend, or to simply grant dismissal of the action instead of entry of judgment.").

## VI. CONCLUSION

Accordingly, the Court **GRANTS** Villaraigosa's Motion for Judgment on the Pleadings. The Court further **GRANTS** both parties' respective Requests for Judicial Notice and **GRANTS** Cloobeck's Motion to Strike. Because amendment would be futile, leave to amend is **DENIED**. Accordingly, Cloobeck's action is **DISMISSED WITH PREJUDICE** and **WITHOUT LEAVE TO AMEND**. Villaraigosa must file a proposed judgment within 5 days of the issuance of this Order. Cloobeck will have 3 days thereafter to file any objections.

**IT IS SO ORDERED**.